Loose, Plaintiff in error, vs. The State, Defendant in error.

*November 21—December 11, 1903.*

*Trial: Rules of court: Setting aside: Discretion: Appeal and error: Criminal law and practice: Remarks of court: Separation and exclusion of witnesses: Violation of order by witness: Exclusion of evidence: Contempt: Competency of witnesses: Age: Birth: Family records: Memoranda: Best evidence: Rape: Consent: Assault with intent to commit rape: Statutes: Instructions to jury.*

1. A trial judge may at pleasure set aside a rule of his own making, designed to regulate the continuance of causes after being once set down for hearing, without committing reversible error, or error at all, if the rights of no one are not thereby clearly and substantially prejudiced.

2. In a criminal case it is not error to say in the presence of the jury, in effect: A cause for arrest does not indicate any cause for conviction. When a person is duly charged in such a cause and placed upon his trial it is presumed to have been regularly done, but does not furnish any reason to be considered by the jury as regards the fact of guilt.

3. The placing of witnesses in a judicial trial under a rule as regards their presence in court other than when giving their testimony, until that shall have been given, and as regards communicating with each other till they shall have testified, is wholly a matter of judicial discretion.

4. If a witness put under a rule, as stated in the last paragraph, violates the same, it does not furnish any legitimate ground for the exclusion of his evidence if the party calling him is an innocent party in the matter.

5. In case of a violation of a rule as mentioned in the preceding paragraph, the person calling the witness being innocent in the matter, punishment for the transgression should be confined to the witness himself, as for a contempt of court.

6. A person having arrived at an age rendering him competent to testify as a witness in court, may give evidence respecting his own age, although his knowledge thereof be based wholly upon hearsay.

7. A family record is not the best evidence of a birth noted therein, nor original evidence in respect thereto, the person who made the record being alive, competent to testify, and within reach of the court. In such a case such record is of no higher dignity than any other memorandum.

8. The maker of a memorandum, or person who knew at some time that it was made correctly, may use the writing in or out of court to refresh his memory preparatory to testifying in respect to the matter therein referred to, and after doing so may so testify though having no present knowledge as to the truth of such matter independently of the writing.

9. The fact that the witness, in the circumstances above stated, fails to produce the memorandum in court, gives no ground for rejecting his testimony, unless he unreasonably refuses to produce it pursuant to the court's order. Absence of the writing can be considered as bearing on the credibility of the witness to such extent as the jury think proper under all the circumstances.

10. Under sec. 4382, Stats. 1898, disabling females under the age of fourteen years from consenting to sexual intercourse, one committing such an act upon such a female, regardless of the means used to accomplish it, and of the female's consent and co-operation, is guilty of the crime of rape.

11. An attempt to do the act mentioned in sec. 4382, Stats. 1898, regardless of the means resorted to and of whether the female consents or not, is an assault with intent to commit the crime of rape under sec. 4383, Id.

12. The fact that a person charged with the crime of rape under sec. 4382, Stats. 1898, may instead be charged under sec. 4580 with the offense of fornication, or be charged under appropriate statutes with the crime of seduction, or incest, according to the facts, does not militate against the validity of such statutes nor the wisdom thereof, since the manifest purpose of

Loose v. The State, 120 Wis. 115.

the same is to insure adequate punishment, so far as practicable, of persons guilty of unlawful commerce with female children, avoiding the danger of their going entirely unpunished in some cases because of the severity of the penalty, or the law being endangered by the prohibition against cruel and unusual punishments,—in view of the change in the legal age of consent to fourteen years. Criticisms of the legislative policy, above indicated, made in *State v. Wentler*, 76 Wis. 89, withdrawn.

13. The rule as regards the evidentiary effect of disclosure or failure to make disclosure by a female, to those in her confidence, as regards a crime of rape perpetrated or attempted to be perpetrated upon her, does not apply where the element of nonconsent in respect to the offense is supplied by the statute and there is consent in fact.

14. Neither does such rule apply to a person to whom disclosure is made, who delays in reporting her knowledge to others or causing legal proceedings to be instituted.

15. It is not the duty of the court, nor is it proper as a general rule, upon request or otherwise, to point out to the jury the evidence of any particular witness upon a disputed matter, giving particular significance thereto and stating how it should or should not be viewed as regards the truthfulness thereof.

16. The suggestion customarily made to juries in prosecutions for rape, that they should view the evidence of the prosecuting witness with great care, having regard for her state of mind as an injured person, and be on their guard against being moved by sympathy for her to give undue weight to the state's evidence, does not apply to a case where, though there was nonconsent by force of the statute, there was consent in fact.

17. The court having instructed the jury in a criminal case that they should acquit the accused unless satisfied of his guilt from the evidence beyond every reasonable doubt, is not required, whether requested or not, to give further instructions on the same subject.

.[Syllabus by MARSHALL, J.]

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Affirmed.*

Plaintiff in error was informed against for having, in the county of Milwaukee, August 19, 1902, had criminal knowledge of and abused Louisa Heyer, a female child under the age of fourteen years. Such proceedings were duly had in

respect thereto that the accused was found guilty by the verdict of a jury, of assault upon the person named with intent. to commit the crime of rape. Judgment was rendered accordingly. The writ of error was sued out to review the same.

*H. L. Eaton,* for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General* and *W. D. Corrigan,* second assistant attorney general, and oral argument by *Mr. Corrigan.*

MARSHALL, J. The questions raised by the errors assigned so far as insisted upon, will be treated in detail and in the order of their presentation in the brief of counsel for plaintiff in error.

1. Did the court err in taking the case off the calendar November 21, 1902? That is predicated on these circumstances: Previous to the call of the case for trial it had been placed upon the day calendar for that purpose. There was a rule of the trial court to the effect that a case thus placed should not be continued beyond the time when regularly reached, in response to an application therefor by either party, unless for a cause not known to such party when the calendar was made up, or arising thereafter. Upon the trial day, the prosecuting officer made the application in question, giving as a reason that he had been unable to procure the attendance of the state's witnesses. Testimony was taken in open court in support of the application, showing that subpœnas for witnesses had been regularly issued and placed in the hands of an officer to be executed, and that he had made quite extensive efforts to do so and failed. The showing being satisfactory to the court the application was granted, the attorney for the accused objecting thereto. It is said that the ruling was in violation of the rule above mentioned, and of Circuit Court Rule XX. The latter plainly applies to continuances for the term, not such as the one in question.

The rule of the trial court, as the judge thereof held, was fairly complied with. We see no reason to override that decision. It was made in the due administration of the court's own rule, which it had authority to violate if it saw fit, saving the rights of adverse parties from serious prejudice. There was, however, no purpose to ignore the rule. On the contrary the court enforced it to the extent which justice seemed to require. Such a rule is one of procedure merely, made by the court for the conduct of its own business. A violation of it could not properly be considered reversible error under any circumstance, in the absence of the most clear and satisfactory showing that the objecting party was substantially prejudiced thereby. There is no showing at all in that regard appearing in the record.

2. Did the court, in the presence of persons called to serve as jurors, when they were examined as to their competency, make remarks prejudicial to the accused? These are the remarks calling for consideration under that proposition:

"There may be cause for a man to be arrested a great many times when there is no reason why he should be convicted."

"It is always supposed that there is sufficient reason for a man to be before the jury when he is charged with an offense, or otherwise he would not be there, but that is no reason to be considered by the jury at all."

The record does not disclose the cause for making such remarks. The occasion seems to have been the excusing of a juror for cause. The examination of the juror was not preserved in the record. The circumstances suggest that such juror, on his examination, probably expressed some leaning against the accused from the mere fact that he had been arrested and placed on trial upon a serious charge. In any event, the reasonable meaning of the language of the court seems to be that a man may be charged with being guilty of a criminal offense, constituting a legitimate ground for arrest-

ing and placing him on trial, yet there be no reason what-
ever for his conviction because of his innocence of the charge;
therefore that the mere circumstance that an accused per-
son, in the due course of the administration of justice, is
compelled to submit to a trial on a criminal charge, should
not have any influence whatever, upon the jury called to de-
cide the matter, unfavorable to him.    In that sense what the
court said is not subject to criticism.    It is proper to so in-
form a jury in submitting a case to them for final determina-
tion, or when being examined upon the *voir dire*.    It cannot,
when said at any stage of a case, be reasonably considered
otherwise than as favorable to the accused.

3.  Did the court err in receiving testimony against the ob-
jection of counsel for the accused?

At the commencement of the trial the court exercised its
discretionary authority in accordance with the wishes of the
accused, to exclude witnesses from the courtroom except as
they were called to testify, yet subsequently witnesses were
allowed to testify who had violated, innocently or otherwise,
the order in that regard.    The practice of putting witnesses
under a rule during the trial, so that one shall not be affected
in his testimony by that of another, and so that, so far as pos-
sible, concert between witnesses may be prevented, is as old
as the history of trials in English courts.    It is doubtless a
very valuable means to the end to be attained, the discovery
of truth.    The use thereof is rarely ever refused when ap-
plied for by a party; while a careful court will sometimes
discover situations where such means should be adopted, and
act accordingly, without the application of counsel upon
either side.    Nevertheless, neither the exclusion of witnesses
while others are testifying, nor the separation of witnesses
till they shall have given their testimony, is a matter that
can be insisted upon as a right.    It is a subject wholly under
the control of the court, limited only by the boundaries of
sound judicial discretion.    *Roberts v. State,* 122 Ala. 47, 25

South. 238; *Comm. v. Knapp,* 9 Pick. 496; *U. S. v. White,* 5 Cranch, C. C. 38, Fed. Cas. No. 16,675; *Hey v. Comm.* 32 Grat. 946; *Rooks v. State,* 65 Ga. 330; *Jemmison v. Gray,* 29 Iowa, 537; *People v. Hall,* 48 Mich. 482, 12 N. W. 665; *People v. Garnett,* 29 Cal. 625; *People v. McCarty,* 117 Cal. 65, 48 Pac. 984; *Rainwater v. Elmore,* 1 Heisk. 363. Being a discretionary matter, it falls within the famliar rule that the decision of the trial court in respect thereto is not subject to review except for a manifest abuse of power. That, obviously, involves a pretty clear showing in any case that the person objecting was prejudiced by the ruling. True, there is no want of authority that a party to a judicial trial is entitled as a matter of right to have witnesses put under a rule as to their presence in court during the examination of other witnesses, and as to their conduct during the trial of a cause before giving testimony. *Watts v. Holland,* 56 Tex. 60; *Smith v. State,* 4 Lea, 428. But the great weight of authority is the other way, and the judicial policy of this state is in harmony with such weight. Testing the complaint of the plaintiff in error on this subject by the foregoing, no reason is perceived for holding that reversible error was committed in allowing the witnesses to testify. There is no indication, that we can discover, that the accused was prejudiced by the court's ruling. However, if there were such prejudice, the doctrine supported by the weight of authority is that the violation of the court's order does not go to the competency of the violator as a witness unless the party calling him is a guilty participant therein. *Bulliner v. People,* 95 Ill. 394; *People v. Boscovitch,* 20 Cal. 436; *Rooks v. State, supra; Davis v. Byrd,* 94 Ind. 525. That is just. An innocent party should not be deprived of the testimony of one of his witnesses because of the latter's transgression of which such party is innocent. Such transgression may well bear on the credibility of the witness' testimony, as has often been held, many of the cases cited being

examples of that, but the direct punishment for the offense should be visited upon the offender himself, as for a contempt óf court; and such is the rule laid down in many of the cited cases.

Complaint is made because the girl upon whom the offense was alleged to have been committed testified as to her own age. That was proper by a well-settled rule of evidence. Any one, after arriving at the age of discretion so as to be competent to testify as a witness at all, may give evidence as to his own age. 2 Jones, Ev. § 303, and cases cited. And that applies though the witness has no other knowledge in respect to the subject except that which was told him by his parents. *Hart v. Stickney,* 41 Wis. 630.

The father of the alleged abused child was permitted to testify as to her age. Objection was raised to that because the witness indicated that he relied in part, in giving his testimony, upon a memorandum made by him at the time of the child's birth, which memorandum was not produced in court. We are unable to discover any error in that. The witness testified to the effect that he was present at such birth, that he made the memorandum, and knew at the time thereof that he made it correctly. One may refer to a memorandum made by himself for the purpose of preparing to give testimony in regard to the fact involved, even if he has no present recollection independent thereof, so long as he knows that, when he made it, it was in accordance with the truth. *Bourda v. Jones,* 110 Wis. 56, 85 N. W. 671; *Nehrling v. Herold Co.* 112 Wis. 558, 568, 88 N. W. 614. The mere fact that the memorandum is not produced in court at the time the witness' testimony is given may go to the credibility of such testimony, but does not go to the competency thereof or justify the court in rejecting it unless the witness unreasonably refuses to comply with the order of the court to produce the memorandum. The idea suggested by counsel that the memorandum made by the witness in this case, which appears to

have been an ordinary family record, was the best evidence, cannot find favor. No mere private memorandum has that dignity, ordinarily. Generally speaking, its only proper use in a judicial investigation involving the matter to which it refers is to refresh the memory of the witness who made it or who at some time knew that it was correct, or as evidence in connection with the verbal testimony and as a part of the witness' evidence.

4. Did the court err in refusing to direct a verdict in favor of the accused?

The claim is made in support of the affirmative of that proposition that, since the charge was laid under sec. 4382, Stats. 1898, i. e., that the accused did wilfully and carnally know and abuse the female child mentioned, she being under the age of fourteen years, the calls of the statute were for some element of actual violence, or some actual force and subjection of the female's will; that carnal knowledge of the girl by her consent and co-operation does not satisfy the statute, nor a mere attempt in that regard, she consenting thereto, constitute an offense within the meaning of sec. 4383, Id., under which the accused was convicted; that if he was guilty of any offense it was that of fornication under sec. 4580, Stats. 1898, or of taking indecent liberties with the girl, not intending to commit rape upon her, under sec. 4588a; or else that secs. 4382 and 4383 are void for uncertainty, in view of the other sections referred to, under the reasoning in *State v. Wentler,* 76 Wis. 89, 44 N. W. 841, 45 N. W. 816.

We do not deem it necessary at this time to go into a very lengthy examination, analysis and discussion of the statutes referred to and others that might be mentioned, since the significant element in sec. 4381, placed there by the act of 1887, which mainly led to the condemnation thereof in *State v. Wentler,* was subsequently eliminated therefrom, and later, in *Proper v. State,* 85 Wis. 615, 55 N. W. 1035, and *Lanphere v. State,* 114 Wis. 193, 89 N. W. 128, secs. 4382 and

4383, and the whole code of laws so severely criticised in the former case, were in effect approved. The circumstances in *Proper v. State* were quite similar to those here. The accused was charged in one count under sec. 4382 and in another under sec. 4383. He was convicted under the latter. A correct understanding of the decision requires one to keep in mind that in *Fizell v. State,* 25 Wis. 364, the court held that the offense mentioned in sec. 4383, as regards females under the age of consent, is an attempt to commit the offense mentioned in sec. 4382, therefore that the latter necessarily includes the former. Counsel for the plaintiff in error argued, in *Proper v. State,* the same as counsel does now, that consent on the part of the female, though under the age of legal consent, is inconsistent with the crime of rape or assault with intent to commit such crime, supporting such views with substantially the same reasoning as counsel for plaintiff in error now indulges in. That does not clearly appear by the report of the case as published, but this quotation from the counsel's brief shows it very plainly:

"While the common form of an attempt to commit the ordinary rape is by assault with such intent and on an indictment for rape there may be conviction of assault if no technical rule prevents in matter of principle and by the better judicial determinations there cannot be under the common-law rules, an assault with intent to have carnal knowledge of a girl with her consent: because by the common law violence consented to is not an assault and the statute which makes her consent immaterial in defense of the carnal knowledge does not extend to the assault."

The court disposed of the argument, both as to the validity of the statute and as to the calls thereof being for some act of actual violence and being inconsistent with consent of the female, very briefly, using language to this effect:

"The prosecutrix, being under the age of consent, was conclusively incapable of legally consenting to the offense charged. It was therefore neither necessary to allege nor to prove want of consent. Any attempt to have carnal knowl-

edge of a female under the statutory age of consent is,
by force of the statute necessarily against her consent and
forcible. There is no ground for saying that the statute
under which the defendant was prosecuted is void for un-
certainty."

The law of this state is so well settled along those lines,
that were it not for the contrary doctrine being forcibly urged
upon our attention at this time we should not feel warranted'
in discussing the matter. The very clear statement of the
law in *Fizell v. State* was never, after being there promul-
gated, seriously questioned here for some twenty years. The
occasion of it then was the radical change in the statutes,
making it possible that a person might be charged with the
crime of rape based upon an act committed upon a consent-
ing female who had arrived at the age of puberty and was a
common prostitute, an act punishable possibly under either
of several other statutes, and under sec. 4382, for a time, by
life imprisonment, and after 1889, in effect, for that period.
Such legislation was deemed so drastic by some that every
possible effort that could be made was resorted to by ingenious
counsel to avoid the literal effect thereof. However, in the
very thorough analysis of all the statutes having any bearing
on the subject, the court said, in *State v. Wentler,* 76 Wis.
89, 44 N. W. 841, 45 N. W. 816, in respect to sec. 4382:

"The offense punishable under this provision is established
when it is satisfactorily proven that the person charged with
such offense has in fact had sexual intercourse with the fe-
male named in the information, and that she was under the
age of fourteen years; and the means used for the purpose
of accomplishing such intercourse are wholly immaterial. It
may be brought about by persuasion, force or fraud. Still
the offense has been committed if the intercourse takes place,
and it is as clearly applicable to a case of fornication, adul-
tery, seduction, or incest as it is to a case of ravishment by
force or fraud."

Taking that in connection with the very plain language of
*Fizell v. State* to the same effect, of which it is merely af-

firmatory, notwithstanding the changes in the statutes to which we have referred, it will be appreciated how useless it is to consider the proposition counsel for plaintiff in error now urges upon our attention, unless we are prepared at least to seriously face the probability that it would be well and proper to overrule the decisions on this subject that have stood as the law of the state for twenty-five years. We are not so prepared. On the contrary, if it were an original question it does not seem that any different conclusion could reasonably be reached than that which was early declared.

As before indicated, while all the criticisms of the statutes found in *State v. Wentler* have been remedied or rendered by subsequent decisions unimportant,—since some of them have not been specially referred to in any subsequent decision, yet the general condition of our statutes which gave rise thereto has not been changed, the change made going only to the matters held in that case to be fatal; and we have evidence here that those things which brought out the other suggestions unfavorable to the laws still remain therein, and such suggestions are liable to be troublesome to trial courts and give false hopes to convicted persons for relief here, as is the case now,—we will go over the subject in response to counsel's argument.

In *State v. Wentler* the court pointed out these then seeming inconsistent and unreasonable features in the statutes punishing the various phases of unlawful intercourse between the sexes: (a) The ravishment of a female over ten and under fourteen years of age by force and against her will, under sec. 4381, is punishable with less severity than the ravishment of a female of the same age by her consent under sec. 4382, rendering the two provisions clearly in conflict. (b) Under sec. 4381 the circumstance that the female is a common prostitute mitigates the offense, though the criminal act be perpetrated by force and against her will, while the same act under sec. 4382 is punishable regardless of circum-

stances, by imprisonment of the male offender for life.
(c) Under the various sections of the statutes circumstances
might exist, as to an act of unlawful intercourse, such that
the male participant therein might be prosecuted for incest,
adultery, fornication, seduction or rape.   (d) The result of
holding that all of the several sections of the statutes are valid
would be in effect to hold that they clothe the district at-
torney with authority to decide as to an act of a particular
species of crime, under which of the various sections referred
to the offender shall be charged.   (e) The statute permitting
punishment, as it may for an act of sexual intercourse with
a common prostitute might fall under the constitutional con-
demnation of cruel and unusual punishments, and in any
event that it is such an outrage upon justice as to suggest
that the legislature did not intend to make such a law and
to lead to the conclusion, upon comparing it with other stat-
utes, that it is fatally repugnant to some of them providing
for a more humane punishment, and is void.   No suggestion
was made that it was not within the power of the legislature
to make laws with the features mentioned in "b," "c" and
"d."   The peculiar and unreasonable character thereof was
merely referred to, under a familiar rule for judicial con-
struction, as giving rise to ambiguity when the laws were
considered with regard to the purposes thereof and compared
with each other, requiring the court to determine the legis-
lative purpose, if possible, otherwise than by looking at the
letter of each statute by itself.   The cause then under con-
sideration, as indicated, arose under the statutes as they ex-
isted in 1888.   It involved, directly, only the validity of the
amendment to sec. 4382 contained in ch. 193, Laws of 1887,
raising the age of consent from ten to fourteen years, leaving
the punishment the same as before, and creating the repug-
nancy between such section and sec. 4381.   Such difficulty
was discovered and brought to the attention of the legisla-
ture at its session in 1889, before the court had spoken on

the subject. In an attempt to remedy the same, ch. 368, Laws of 1889, was passed.. The defect subsequently said by the court to be fatal to the law of 1887, and the one strongly suggested as probably so, was sought to be cured by so amending sec. 4381 as to change the age limit therein to twelve years, the unfortunate mistake being made, however, of using the word "under" instead of the word "over," making the statute apply to offenses upon females under the age of twelve years instead of over that age, as was manifestly the legislative intent; and by so amending sec. 4382 as to change the age of nonconsent from fourteen to twelve years in harmony with the intended change in sec. 4381, and to make the punishment which theretofore was life imprisonment in all cases imprisonment for not more than thirty-five years nor less than five years. In 1891, at the first opportunity for dealing with the matter, after the mischief created by the mistake mentioned was discovered, and after the decision in *State v. Wentler* was known, the subject was again considered by the lawmaking power in the light of the judicial criticisms upon its previous work; and in what resulted, ch. 350, Laws of 1891, it must be presumed that the legislature intended to remedy all defects judicially discovered, so far as existing laws on the subject were in excess of legislative authority, and so far otherwise as in its judgment a remedy should be applied. Sec. 4381 .was amended merely by correcting the mistake referred to. No other change was then made therein or in any other law on any kindred subject. The matter was again before the legislature in 1895, resulting in ch. 370, Laws of that year, whereby the age limit in secs. 4381 and 4382 was changed to fourteen years.

Thus, in the light of the severe criticisms made in *State v. Wentler,* of the laws on the subject of unlawful commerce between the sexes as such laws existed at that time, the legislature has twice specially considered the matter and generally considered the same in the late revision of the statutes, with-

out making any change except to eliminate the one feature
said to be fatal to the law of 1887 and the one suggested as
probably so,—those we have designated as "a" and "e."   The
conclusion from that seems irresistible that the legislature
bowed to the authority of the court, so far as it was held
that it had previously acted in excess of its power, and that
otherwise it concluded to adhere to its own judgment as to
the best public policy, as it had a right to do.   In that, the
features thereof mentioned in "b," "c" and "d," now pointed
to upon the authority of *State v. Wentler* as either rendering
secs. 4382 and 4383 fatally defective or leading to the con-
clusion that the offense of which the plaintiff in error was
charged does not fall under the former, nor the offense of
which he was found guilty under the latter, were indorsed
by the lawmaking power, with the expressed opinion of this
court that it was probably within its power to do so.

Surveying the statutes as a whole, from all that has gone
before, features "b," "c," and "d," aforesaid, that once
seemed to the court highly unreasonable under the circum-
stances then existing, do not have such appearance now.
Doubtless in making the radical innovation of raising the
age of consent from ten to fourteen years the legislature had
in mind the construction of the statutes in *Fizell v. State,*
and fully appreciated that cases were likely to arise falling
within the letter of sec. 4382 where it would be monstrous
to charge the offender with being guilty of a crime that might
send him to the state's prison in effect for life.   The offender
might be a mere boy; the female a common prostitute, and
there be a concurrence of minds with no very great differ-
ence as to the leading spirit.   It doubtless was seen by the
lawmakers, and they acted having regard for the fact, that
cases were liable to arise falling within the letter of such
section, where justice would be fully satisfied, or at least
punishment would be much more certainly visited upon the
offender, and so far as practicable justice would be satisfied

if not fully so, by charging him under the statute on the subject of fornication, or some other statute covering his offense, than by attempting to secure his conviction of the heinous crime of rape. Such attempt, it could be foreseen, under some circumstances might lead to the infliction of a too harsh punishment,—one the very contemplation of which might likely, in view of that supreme equity in the law that puts so much power in trial juries in criminal cases, result in the offender going entirely unpunished. It was also doubtless appreciated that it was impracticable to differentiate as regards the circumstances respecting all cases that might possibly arise, dividing them with some degree of accuracy into classes, and framing acts so that an offense as to one class would not fall under the statute designed to reach another. Raising the age of consent from ten to fourteen years, regardless of circumstances, so as to apply to common prostitutes upon the one hand and mere boys upon the other,—all classes regardless of means used to accomplish the unlawful purpose,—was fraught with many difficulties of a most serious character, among them, as indicated, being the danger that the very severity of the law might in many cases be a stumbling block to the infliction of any punishment in cases calling loudly therefor, unless existing statutes were left undisturbed, with administrative authority lodged somewhere as to which statute was best calculated to cover the given case. Facing those situations, the legislature, presumably with full knowledge of all this court had said on the subject, in its own and superior wisdom has spoken intending to leave the prosecuting officer to exercise the administrative authority mentioned, since this court has held that such must be the result of leaving the statutes in regard to the matter as they were in 1888. They have been so left. That authority is doubtless not unlimited. It cannot be arbitrarily exercised. The trial court must necessarily have supervisory control over it so as to prevent any manifest abuse thereof. With-

out the features referred to, it would still be doubtful whether sec. 4382, providing as it does for a maximum punishment of thirty-five years in the state's prison, and a minimum of five years' imprisonment, would not offend against the constitutional provision condemning cruel and unusual punishments, extended, as it is, so as to include the sexual act between a mere boy and possibly a common prostitute. In this the wisdom of retaining sec. 4580 unchanged, in connection with the amended sec. 4382, is apparent. In some instances falling under the latter, if the charge were so laid, jurors, holding to their own ideas of duty, in extreme cases would not convict.

If anything were needed to re-enforce what has been said as to the legislative attitude, as to a mere attempt, in the sense of physical effort, to have commerce with a female child under the age of consent, regardless of attending circumstances, being an assault to commit the crime of rape, it is furnished by the act of the legislature, sec. 4588a. It provides for punishing a person severely, the maximum being imprisonment in the state's prison for a term of two years, for taking indecent liberties with a female under the age of fourteen years, with or without her consent, *there being no intent at the time to commit upon her the crime of rape.* That was further supplemented in 1897 by sec. 4591a.

The conclusion must be the legislature supposed that the intent to commit the crime of rape, added to the act made so highly criminal by its last utterance, should satisfy the calls of sec. 4383; and with the former statutes to which we have referred, secs. 4382, 4383, 4580, 4588a, and 4591a, and other laws incidentally referred to, all standing together, and with the effect we have indicated, would prevent or punish, so far as practicable, abuse or corruption of female children.

5. Did the court err in refusing to give instructions requested by counsel for the accused? Six or more distinct requests made by counsel were refused, all bearing on the

subject of early complaint by the abused female in case of rape, of the offense committed upon her. Such requests were framed upon the theory that actual violence of a hostile character is an essential ingredient of rape upon a female under the age of fourteen, under the statute, and that the usual rule in respect to rape committed upon a female having legal capacity to consent to the sexual act applies to a case like this, where the evidence is undisputed that the girl was an actual participant in the offense. The mere statement of the proposition is sufficient to show its utter absurdity. Such rule has no application whatever to the facts here. The requests were properly refused. Such rule springs from the fact that a female upon whom the crime of rape has been by actual violence committed, will naturally, at the first opportunity, complain thereof to those in her confidence. Ordinary common sense would suggest that where the act of intercourse constitutes rape regardless of consent upon the part of the female because of her statutory disability in that respect, and she not only fails to object or resist, but consents and co-operates, the natural bent of her mind thereafter would be to enable her immoral associate to escape the consequences of his criminal act,—to shield rather than to aid in punishing him. To apply the general rule to such a case would be unreasonable in the highest degree. The trial court very properly instructed the jury to that effect.

6. A female witness who testified to having discovered the accused and the girl while in the act of committing the offense charged, did not disclose her information in regard to the matter for nearly a month. As to her evidence the court was requested to specially instruct the jury that the delay strongly suggested that her evidence given in court was untruthful. Such instruction was properly refused. It would have been plain error to have so instructed. The witness gave a very good explanation of her delay,—one that was consistent with her being a modest, honest woman. We need

not go into the details of her evidence leading to that con-clusion. Suffice it to say that, after a careful consideration thereof, it seems her conduct in not promptly informing against the accused was not a circumstance which warranted the court in giving special significance thereto as tending to impeach her. In any event, it would not have been proper to instruct the jury that the delay, of itself, raised a strong presumption of the falsity of her testimony. The most that would have been proper to state under any circumstances, is that the delay was a matter for consideration, with all the other circumstances bearing on the question, in determining the credibility of the witness's evidence. There is no rule that required the court, upon request or otherwise, to do even that. The doctrine as to an early disclosure by a prosecutrix, of the crime of rape committed upon her by force, had no ap-plication to the witness. Moreover, it is not the duty of the court, in any case, upon request or otherwise, to single out the evidence of any particular witness and instruct the jury in regard thereto, as to how they should or should not view the same.

Two requests to instruct were refused, which were to the effect that the jury should view the evidence of the girl with great care, having regard for her condition of mind as an in-jured person, and guard themselves against being moved by sympathy in her behalf, to give undue weight to the evidence against the accused. Here again, counsel's attitude was that the same rule should apply where the female, though com-petent, is not conscious of having been wronged, where she is really a participant in the unlawful act, which applies in case of the crime of rape committed by actual violence. Ob-viously the requested instructions were not good law.

Several instructions were refused which were framed upon the theory that although the girl was under the age of legal consent, the accused could not be convicted of the full offense charged, nor with assault with intent to commit such offense,

nor of assault, in the absence of evidence of actual violence toward the girl and subjection of her will. From what has been said no further discussion is necessary to demonstrate that such requests were properly refused.

Complaint is made because the court refused to specially instruct the jury as follows:

"The defendant is entitled to have the evidence against him carefully and closely considered, and can only be convicted if, after such scrutiny, you can say upon your oaths that the evidence leaves upon your minds no reasonable doubt as to his guilt."

We are unable to see how error can be predicated on that, since the court fully instructed the jury that it was their duty to acquit the defendant unless satisfied beyond every reasonable doubt of his guilt in respect to some criminal offense charged against him in the information, and to acquit him of any offense so charged of which they were not from the evidence so satisfied.

7. Numerous instructions were given by the trial court in harmony with the rules of law heretofore discussed, requiring the rejection of counsel's requests for instructions, to the effect that the crime of rape, or assault to commit the crime of rape, cannot be committed upon a female actually consenting thereto, and that the evidentiary rule as to early disclosure by the abused female, of the offense committed upon her, does not apply to one whose consent to the act does not militate against its criminal character by force of the statute. Obviously the court gave the law in that regard to the jury correctly.

The foregoing covers all the propositions urged upon our attention. No reason is perceived why the judgment should be disturbed. It must be affirmed.

*By the Court.*—So ordered.