**Ernest TATUM, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13354.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 19, 1956.

Decided Nov. 6, 1957.

Petition for Rehearing In Banc Denied Dec. 6, 1957.

---

Mr. Thomas J. Dougherty, Washington, D. C., with whom Mr. Jerome H. Heckman, Washington, D. C. (both appointed by this Court) was on the brief, for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Arthur J. Mc-

Laughlin, Asst. U. S. Attys., were on the brief, for appellee.

Before PRETTYMAN, BAZELON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

Appellant was convicted of carnal knowledge of a nine-year-old child, following reversal of a prior conviction by this court.[1] The points raised on this appeal concern the admissibility of certain medical testimony and the necessity of certain instructions.

The first question is whether the trial court erred in admitting the testimony of an expert witness who admittedly had no independent recollection of the facts to which he testified,[2] but who testified after reviewing his testimony recorded at the first trial. Appellant claims the testimony is inadmissible as not meeting the standards of either "present recollection revived" or "past recollection recorded", and that prejudice resulted from the impossibility of cross-examining the witness effectively.

The challenged testimony involves conclusions that appellant was mentally competent at the time of the crime, based on mental examinations of appellant made by the witness in August and September of 1949. The first trial, the record of which formed the basis of the witness' present testimony, occurred in early February of 1950.

The effect of the witness' testimony in the circumstances of this case was to introduce in evidence the substance of his testimony as recorded at the first trial. "Whether the record is directly admitted into evidence, or indirectly by the permissive parroting of the witness, it is nevertheless a substitute for his memory and is offered for the truth of its contents." United States v. Riccardi, 3 Cir., 1949, 174 F.2d 883, 887.

■ ■ There is no doubt that had the witness been legally unavailable his former testimony would have been admissible and could have been proved by the stenographic transcript of the first trial. Cf. Meyers v. United States, 1948, 84 U.S. App.D.C. 101, 171 F.2d 800, 11 A.L.R.2d 1, certiorari denied, 1949, 336 U.S. 912, 69 S.Ct. 602, 93 L.Ed. 1076. Court reporters are officials appointed by the court under authority of statute for the purpose of preserving testimony, and their transcripts, by statute,[3] "shall be deemed prima facie a correct statement of the testimony taken. * * * "[4]

Nor should it be disputed that a judicial transcript is the proper subject for a record of past recollection.[5] Courts have long acknowledged the propriety of a witness adopting a recollection recorded in the past where his once existing recollection has vanished. The chief difficulty precluding the use of past recorded recollection has been the need to insure "the accuracy and identity of the record," i. e., that the memorandum or document reflects the witness' past recollection. 3 Wigmore, Evidence 64 (3d ed.1940). To this end courts have formulated rules designed to guarantee that the recorded knowledge was clearly and accurately remembered by the witness when the record was made or verified. United States v. Riccardi, supra. If these requirements of reliability are met, the nature of the record as well as the mode of its preparation should be immaterial.

■ The use of a judicial transcript recorded by an official court reporter at a time when the events to which the wit-

---

1. Tatum v. United States, 1951, 88 U.S. App.D.C. 386, 190 F.2d 612.

2. Upon cross-examination the witness admitted that his present recollection consisted solely of a present recognition of appellant and the fact that he had examined him in the past.

3. 28 U.S.C. § 753(b) (1952).

4. Wigmore advocated the acceptance of former testimony whenever the witness was presently unable to testify, even where lapse of time was responsible for the loss of present recollection. 5 Wigmore, Evidence § 1408 (3d ed.1940).

5. We note a paucity of authority on this point. See cases cited at 125 A.L.R. 246 (1940).

ness testified were fairly fresh in his mind satisfies the essential tests of reliability. Keeping in mind that the rules governing the use of past recorded recollection were developed "to secure the best available memory of the witness, while guarding against imposition by false use of purporting memoranda," [6] we are not willing to say that the trial judge abused his discretion in admitting this testimony. Cf. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 231–7, 237, 60 S.Ct. 811, 84 L.Ed. 1129.

■ In the present case the witness reviewed the transcript before the trial. Perhaps a more orderly judicial procedure in this situation would recommend that the witness produce and use the transcript while testifying.[7] It appears from this record, however, that appellant did not question the authenticity of the document which the witness reviewed and, being a matter of public record, the transcript was at all times available to appellant. Thus appellant had an opportunity to check the verity of the testimony against the transcript and direct attention to discrepancies. Furthermore, the witness was in fact cross-examined

extensively at the second trial concerning his medical opinion formulated from the 1949 examinations; any limitation of the effectiveness of this cross-examination was at least partially cured by the opportunity afforded appellant for cross-examination at the first trial. See Mattox v. United States, 1895, 156 U.S. 237, 15 S. Ct. 337, 39 L.Ed. 409. In these circumstances we do not find prejudice resulting from the procedure followed in the trial court.

■ Appellant also urges the trial court committed reversible error in failing to charge the jury that if appellant should be acquitted by reason of insanity he would be sent to a mental institution for as long as his safety and that of the public require. Appellant contends that under Taylor v. United States [8] such a charge was mandatory whenever insanity is a defense.[9]

The Taylor case did not make such an instruction mandatory in the sense that in all circumstances its omission is reversible error. We need not interpret the precise effect of the language there used, for this instruction, like others, is subject to Rule 30.[10] We must look, then, to

---

6. 3 Wigmore, Evidence 100 (3d ed.1940).

7. It has been held, however, that the production in court of the memorandum of past recollection is not an essential prerequisite to the admission of the testimony. Loose v. State, 1903, 120 Wis. 115, 97 N.W. 526.

8. 1955, 95 U.S.App.D.C. 373, 222 F.2d 398, 404. In this case the court stated: "But we think that when an accused person has pleaded insanity, counsel may and the judge should inform the jury that if he is acquitted by reason of insanity he will be presumed to be insane and may be confined in a 'hospital for the insane' as long as 'the public safety and * * * [his] welfare' require." (Footnotes omitted). Id. at page 379, 222 F.2d at page 404. The omission of this instruction, however, was not made a ground of reversal in Taylor. Ibid. See also Durham v. United States, 1956, 99 U.S.App.D.C. 132, 237 F.2d 760; Kelley v. United States, 1956, 99 U.S.App.D.C. 13, 236 F.2d 746.

9. In Lyles v. United States, 1957, —— U.S. App.D.C. ——, —— F.2d ——, we made such

an instruction mandatory prospectively from that decision.

10. Rule 30, Fed.R.Crim.P., 18 U.S.C., provides in part: "No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The complaining witness was 9 years old when the offense occurred in 1949. One purpose of Rule 30 was to preclude a defendant from exploiting his own failure to make timely objections. In this case there is not even a basis for suggesting the failure was an oversight of counsel.

 · To encourage, or even tolerate this one-sided "Russian Roulette" with the courts could lead to a breakdown of all law enforcement in a system already plagued by multiple trials. Tatum's next plea, if we gave him one, could well be that he has been denied a speedy trial. See Williams v. United States, 1957, 102 U.S.App.D.C. ——, 250 F.2d 19.

see whether manifest injustice resulted from the omission.

The record in this case shows that defense counsel did not request the court to so instruct the jury. Following the judge's charge, the United States Attorney raised the issue of the possible application of the Taylor case. The trial judge indicated he did not regard the instruction as mandatory. Defense counsel neither urged that it be given nor objected to its omission. The defendant having thus consciously and deliberately refrained from asking for the instruction and similarly having failed to object to its omission, he will not be heard to complain of it now, seven years after the offense and six years after his first trial. Considering the entire record, we do not believe the omission of this instruction so prejudiced the appellant's substantial rights as to deprive him of a fair trial.

The judgment below is therefore

Affirmed.

BAZELON, Circuit Judge (dissenting).

In Taylor v. United States, 1955, 95 U.S.App.D.C. 373, 379, 222 F.2d 398, 404, we established the rule that "when an accused person has pleaded insanity, counsel may and the judge should inform the jury that if he is acquitted by reason of insanity he will be presumed to be insane and may be confined in a 'hospital for the insane' as long as 'the public safety and * * * [his] welfare' require." We cited D.C.Code § 24–301 (1951) which provided that, in case of such acquittal, the court "may" certify the fact to the Federal Security Administrator who, in turn "may" order confinement. After our Taylor decision, Congress amended the statute to make commitment to a mental institution mandatory in cases of acquittal by reason of insanity and providing standards and procedure for termination of confinement.[1] The substance of the statute is that a person thus confined will remain confined until the superintendent of the hospital certifies that he has recovered his sanity and "will not in the reasonable future be dangerous to himself or others" and, upon demand of the prosecutor, the court, after notice and hearing, makes those same findings.

What effect the enactment of this statute had upon the instruction to be given the jury came before the full court in Lyles v. United States, —— U.S.App.D. C. ——, —— F.2d ——. We held that, unless it "appears affirmatively on the record" that the "defendant [does] not want such an instruction given * * *, whenever hereafter the defense of insanity is fairly raised, the trial judge shall instruct the jury as to the legal meaning of a verdict of not guilty by reason of insanity * * * ." Exactly what the jury must be told we merely indicated, but did not elaborate, referring, instead, to our discussion of the problem in Taylor v. United States, 95 U.S.App.D.C. at page 379, 222 F.2d at page 404.

The reason for requiring the instruction, as I pointed out in my dissenting opinion in Lyles, —— U.S.App.D.C. at ——, —— F.2d at ——, is that, without it, a jury, influenced by the specter of violent lunatics turned loose in the community, may "convict, despite strong evidence of insanity at the time of the crime." See also Durham v. United States, 99 U.S. App.D.C. 132, 237 F.2d 760 (1956). If justice is to be done, "the jury has a right to know the meaning of [a verdict of not guilty by reason of insanity] as accurately as it knows by common knowledge the meaning of the other two possible verdicts." Lyles v. United States, —— U.S.App.D.C. at ——, —— F.2d at ——.

It is usually impossible to show the exact extent of prejudice to the defendant resulting from omission of an instruction which justice requires. We obviated future questions as to prejudicial effect by holding in Lyles that the instruction is mandatory unless the defendant *affirmatively* shows that he does not want it. In so doing, of course, we did not overrule Taylor or in any way dimin-

---

1. Act of Aug. 9, 1955, 69 Stat. 609, D.C.Code, § 24–301(d) and (e) (1951 Supp. V).

ish its force. On the contrary, we approved it. We did not hold that in cases decided between Taylor and Lyles, the instruction could properly have been omitted even absent affirmative rejection by the defendant. What we did was to establish for future cases the rule we think must flow from the amended statute. Lyles left open the question whether, in a case like the present one, tried after Taylor but before Lyles, the instruction was so mandatory that there was an absolute judicial duty to give it even when the matter had not been brought to the attention of the judge. But the reasoning of both Taylor and Lyles compels the conclusion that, with the instruction brought to the judge's attention, it was error to refuse it.

The judge's refusal to give the Taylor instruction in the instant case is sustained by the majority on the ground that the defense "consciously and deliberately refrained from" requesting it and objecting to its omission. They do not hold, it should be noted, that mere neglect by the defense to request the instruction or object to its omission justifies refusal, but only that conscious and deliberate refraining does so. The question is, then, whether there was such conscious and deliberate rejection of the instruction by the defense as to amount to clear waiver.

What happened below is not in dispute. After the judge had given his charge to the jury, there was a bench conference at which *the prosecutor* said:

"Your Honor, as I recall, the Taylor case says that you should tell the jury, and I understand they all tell the jury, if the defendant's verdict is of unsound mind, why, then, he will be committed to St. Elizabeth's until the authorities over there—"

The judge interrupted:

"I am perfectly familiar with the Taylor case and I want to put it in the record that I will do no such thing. In the first place, it is obiter dicta; and in the second place, it is not so and I will not do it unless the Court of Appeals demands that it be done."

About two months later, in comment upon appellant's affidavit in support of his application for leave to proceed without prepayment of costs, the judge filed a memorandum for the purpose of explaining his reasons for refusing the instruction. Those reasons were (1) that the language as to the instruction was obiter dicta in Taylor; (2) that the Taylor rule is not mandatory; and (3) that in this case, the testimony made it clear that the psychiatrists considered appellant mentally sound. In view of the foregoing reasons, stated the memorandum, "This Court sincerely believes that it would have been mentally dishonest for it to give the instruction."

Waiver is defined by the Supreme Court as "intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. My colleagues put it in terms of "consciously and deliberately" rejecting the right or privilege. It cannot be said that it was "known" to appellant that he had a right to the Taylor instruction, when the trial judge had just finished saying, " * * * it is not so * * * ." And it cannot be said that appellant's silence was an "intentional" relinquishment of the instruction, in the face of the trial judge's flat announcement that he would not give the instruction unless forced to do so by this court.

The fact that the suggestion that the Taylor instruction be given emanated from the prosecution rather than the defense had nothing to do with the trial judge's refusal to give it. That refusal, as I have shown, was based on a theory that the giving of the instruction is discretionary and on a considered judgment that, in the proper exercise of discretion in this case, the instruction should be refused, whether asked by the one side or the other. Nor did the Government, in its argument here, seek to justify the refusal of the instruction on a waiver theory. Rather, it defended it upon the ground that the refusal was a proper exercise of discretion. There is no support

in the record for this court's determination of waiver. The right to the Taylor instruction may not be one of those constitutional rights against waiver of which "courts indulge every reasonable presumption," Johnson v. Zerbst, supra; it is, however, a right so fundamental to the scheme of justice where a criminal charge is defended on the ground of insanity that courts should not seek out waiver where none exists. To construe waiver out of silence in the circumstances of this case is to weaken the fabric of the law not only in this context, but in any other context in which the concept of waiver may be applicable.