Stephen A. SULENTICH, Plaintiff-Appellant,

v.

The INTERLAKE STEAMSHIP COM-PANY, Defendant-Appellee.

No. 12125.

United States Court of Appeals
Seventh Circuit.

June 24, 1958.

Rehearing Denied Aug. 4, 1958.

James A. Dooley, Louis P. Miller, Chicago, Ill., for appellant.

Harlan L. Hackbert, Stevenson, Conaghan, Velde & Hackbert, Chicago, Ill., Robert G. McCreary, Jr., Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, for appellee.

Before MAJOR, FINNEGAN and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

This appeal follows a judgment on a jury verdict in favor of defendant in an action for damages under the Jones Act, 46 U.S.C.A. § 688.

Plaintiff's complaint is in two counts. Count I, seeking damages for personal injuries under the Jones Act, was tried to a jury and Count II for maintenance and cure was tried to the court.

Although plaintiff's notice of appeal stated that he was appealing from both the judgment on the jury verdict for the defendant on Count I and from the judgment of the court for the defendant on Count II, he asserts in his brief that "[t]he errors relied upon arise out

of instructions, rulings on evidence, direction of a verdict on certain charges, and failure of the defendant to maintain its affirmative defense." He deals with these alleged errors only as they affect the jury proceedings on Count I and limits the contested issues to two in number both of which relate solely to the Jones Act. Hence it follows that the judgment on Count II as tried to the court must be affirmed as it has not been challenged on this appeal.

█ The defendant, therefore, insists that this appeal should be dismissed because the judgment of the court on Count II is *res judicata* of plaintiff's right to recover under the Jones Act on Count I. We do not agree and we hold that the plaintiff is entitled to have the alleged errors upon which he relies, arising out of the jury proceedings under Count I as stated by him in his brief, considered by this court.

The plaintiff contends that "[t]he defendant failed to sustain the burden of its affirmative defense, which was that the relationship of master and servant did not exist at the time of the accident"; that "[e]ven though the plaintiff may have misrepresented his condition of health in a physical examination taken long after his entry into defendant's employment, such misrepresentation would not *ipso facto* void his contract of employment, and an instruction to that effect is erroneous as withdrawing from the jury an important issue of fact";

that "[s]ince the instruction [1] was erroneous, it was presumptively injurious to plaintiff and furnishes ground for reversal unless the defendant affirmatively shows that it was harmless"; that "[t]here was no competent evidence on which to base defendant's affirmative defense, or the peremptory instruction"; and that "[t]he court erroneously withdrew from the jury important testimony relating to the employee status of the plaintiff."

█ These contentions are based primarily upon the false assumption that before the jury could return a verdict in favor of the defendant the defendant had to prove its affirmative defense by a preponderance of the evidence. That is not the law. If the jury found that the plaintiff had failed to prove negligence on the part of the defendant it was warranted in returning a verdict for the defendant even though it also believed that the defendant had failed to sustain the burden of its affirmative defense. That is so elemental that citation of supporting authority would be superfluous.

The plaintiff knowingly failed to disclose his true state of health to defendant's examining physician. He testified as follows:

"Q. And at the time you were taking that examination, Mr. Sulentich, you knew that you had had previous pain in your back before you ever came aboard-ship? A. Yes.

---

1. If you believe from the preponderance of the evidence (1) that as one of the terms and conditions of his initial employment on July 11, 1953, the plaintiff's employment was subject to a health examination, and in case he failed to pass such examination, his employment should cease; (2) that upon the health examination on August 15, 1953 the plaintiff knowingly misrepresented to or concealed from the examining physician the fact that he had sustained previous injuries and suffered back pain, or that he had been discharged from the military service for physical disability, or that he had been and was then receiving veteran's disability benefits based on a rating of 30% disability; (3) that such misrepre-

sentation or concealment was material; and (4) that such misrepresentation or concealment was relied upon by the defendant, and that plaintiff would not have been permitted to continue to work and remain aboard the vessel if the true state of facts had been disclosed by him, then plaintiff was not as a matter of right defendant's employee on August 17, 1953 at the time of his alleged accident, and he is not entitled to recover under the statute under which this action is brought, and you should find the defendant not guilty. You are further instructed that the burden of proof is upon the defendant to prove by the preponderance of the evidence each of the four above mentioned elements.

"Q. And you knew that you had injured your back at Reliance Electric Company? A. I had a strained condition there, yes, muscle."

\* \* \* \* \* \*

"Q. You knew, however, Mr. Sulentich, that over a long period of time—and I am speaking of your knowledge at the time you were having this physical examination—that you had received medical treatment for your back from the Veterans Administration? A. Yes, I did.

"Q. And you knew furthermore that you were receiving a compensation from the Veterans Administration based on a thirty percent disability? A. That is right.

"Q. And you knew further that you had had attacks of back pain and diathermy and medication for this condition as recently as April, May and June of that year? A. Well, I had it that year, but I do not know exact dates; treatment, yes."

\* \* \* \* \* \*

"Q. Now, did you disclose any of these conditions to the examining doctor? A. No, I did not."

The examining physician testified that if the plaintiff had disclosed the true facts concerning his history of back trouble "[h]e would be absolutely unfit to be on board this ship as a seaman", and "if he had given me the correct history as to previous injuries to his back, and would have his employment as a seaman immediately terminated and removed from the ship."

There was evidence introduced that both seamen looking for work and ships needing seamen made request through Lake Carriers Association. It serves as an employment agency and has offices at the principal lake ports. Upon coming aboard a ship the seaman signs "Articles" constituting the contract of employment.

The plaintiff went aboard the defendant's vessel, D. O. Mills, on July 11, 1953 at Two Harbors, Minnesota, and hired out as a coal passer thereon. The Mills, an ore boat, was in almost constant travel around the Great Lakes. Upon coming aboard he signed the Articles, running to July 26, 1953, which contained the following provision:

"5. It is mutually agreed that employment hereunder shall be subject to health examination, which shall be given by a physician furnished by the vessel; in case any member of the crew fails to pass such examination, his term of employment hereunder shall cease."

On July 27, 1953 he signed new Articles, running to August 30, 1953, containing the same quoted provision.

Dr. Castle and Associates examined all seamen employed by the defendant. After the opening of navigation in April such examinations were conducted at Duluth, Minnesota, a port visited by the Steamer Mills about twice a month, by Dr. Schuman of Dr. Castle and Associates. If a crew member was found, upon examination by Dr. Schuman, to have something wrong with him the doctor informed the captain of the ship whereupon the crew member's employment aboardship immediately terminated.

On August 15, 1953 the Mills was in port at Duluth for the first time subsequent to the plaintiff signing aboard on July 11, 1953. He was then examined by Dr. Schuman. He signed a health examination report at that time certifying immediately over his signature as follows:

"I hereby certify I have disclosed all previous sickness and injuries and that I am in good health. I also authorize the examining physician to send this report to the employer."

■ The evidence presented a factual question for the determination of the jury. It was for the jury to decide whether the defendant had sustained its affirmative defense by a preponderance of the evidence.

■ The plaintiff asserts that the instruction, set out in full in footnote 1,

"was a peremptory instruction, directing a verdict for the defendant." A cursory reading of the instruction will immediately demonstrate the fallacy of that contention. It is an instruction mandatory in nature and as such must contain all of the essential elements necessary to warrant a finding under defendants' affirmative defense. This it did.

This instruction clearly informed the jury that if the jury did find from a preponderance of the evidence that the plaintiff knowingly misrepresented to or concealed from the examining physician the facts concerning his previous back injuries; *that such misrepresentation or concealment was material;* that it was relied upon by the defendant; and that plaintiff would not have been permitted to continue to work and remain aboard the vessel if the true state of facts had been disclosed by him, then and only then could the jury find that the plaintiff was not an employee of the defendant on August 17, 1953 and would not be entitled to recover. It must be emphasized that the jury was instructed that the misrepresentation or concealment had to be *material.* That is it had to affect the examining physician's conclusion that he was in good health and should be permitted to work and remain aboard the vessel after August 15, 1953. The court further instructed the jury that the burden of proof was upon the defendant to prove by the preponderance of the evidence *every one* of those elements. We hold that the instruction was a correct statement of the law and was properly given *under the evidence in this record.*

■ By giving the instruction:

"Under the maritime law a seaman who becomes disabled in the service of his ship is entitled to medical care without expense to himself. This obligation falls on the shipowner and exists even though the seaman's employment is not the cause of his becoming disabled and even though the disability occurs without anyone's fault or negligence. Thus, the fact that defendant the Interlake Steamship Company arranged for the hospitalization of plaintiff at Duluth and paid for his surgery should not be considered by you as an admission by defendant of its liability for damages",

the court did not withdraw from the jury important testimony relating to the status of the plaintiff. Counsel for plaintiff made the suggestion to the court below that if it was going to give the instruction "just give the last sentence." If the last sentence was not prejudicial the instruction as a whole was not objectionable. In any event no objection was made to the giving of this instruction in compliance with Rule 51 of the Federal Rules of Civil Procedure, 28 U.S. C.A., and plaintiff is, therefore, precluded from raising the question now on appeal. Miller v. New York Central Railroad Company, 7 Cir., 1956, 239 F.2d 10, 13.

We have considered with punctiliosity every other contention raised by the plaintiff and find no merit in any of them.

Defendant's Exhibits O and N are written reports of a health examination given the plaintiff by Dr. Schuman aboard the Mills at Duluth, Minnesota on August 15, 1953. The two reports are each signed by both the plaintiff and Dr. Schuman. Dr. Schuman filled out the blanks in Exhibit N in his own handwriting. The blanks in O were later filled in from report N by typewriter. The forms are identical. Both contain a certification by the plaintiff immediately over his signature that he had "disclosed all previous sickness and injuries." He admitted on cross-examination that he had not.

Both exhibits were admitted in evidence without objection. Plaintiff states, in his original brief, "we specifically objected to its [Exhibit O] introduction * * * ; this objection was summarily overruled", but in his reply brief he unequivocally states he did agree to its admission in evidence. In fact in dealing with Defendant's Exhibits O and N the plaintiff asserts in his reply brief "[w]e agreed to their admissibility to

demonstrate that Schuman had no answer to the particular questions, and that they were supplied at Cleveland by some third person."

The rule of law, as urged by plaintiff, that a witness may use a *memorandum* prepared by himself to refresh his recollection but when he has testified as to the facts the memorandum is not also admissible in evidence has no application here. Cf. 28 U.S.C.A. § 1732. Defendant's Exhibits O and N were not memoranda but rather written reports prepared by the examining physician and signed by the *plaintiff*. They were admitted in evidence by agreement of the plaintiff.

■ The trial court did not abuse its discretion in permitting Dr. Schuman to testify as to the questions asked by him of and the answers given by the plaintiff as reflected by the reports signed by himself and the plaintiff. Lavender v. Kurn, 1946, 327 U.S. 645, 654, 66 S.Ct. 740, 90 L.Ed. 916; Tatum v. U. S., 1957, 101 U.S.App.D.C. 373, 249 F.2d 129, 132.

The trial court committed no error in ruling as it did as to the witness Eckert. The plaintiff asserts "[o]ur purpose was to show that on many boats the stairs were composed of gratings, from which oil and water would readily drain, so that they would not be so slippery as were the steps on the D. O. Mills."

The plaintiff actually made no such offer to prove, in fact made no offer whatsoever. The trial court asked him what he was offering by the witness Eckert and counsel for the plaintiff announced:

"Well, I am going to ask the witness and I intended to examine him, your Honor, on the fact that other vessels doing the same kind of work, there were steps which were of a different character than the one involved in the accident, namely steps which were grated."

As to Edward Merchant he was never sworn and placed on the witness stand by the plaintiff. The defendant objected to him as an expert because he was not shown to be so qualified. The plaintiff made no attempt to qualify him and accordingly no question is presented.

■ Plaintiff insists that a party has the right to comment on the failure of the adverse party to call a material witness shown to be in his control. However, one of the required elements is that he must be a material witness. Plaintiff contends that in *plaintiff's* Exhibit P— he has to mean Defendant's Exhibit P because there is no such plaintiff's exhibit—in Chief Engineer Mensen's handwriting is the statement "Lawrence Grabinski saw him after he fell and he was laying on the lower engine room floor." This exhibit was admitted in evidence. We have searched this record and can find no basis for the assertion by the plaintiff that Harvey Mensen could have testified to anything in any manner material to this case.

■ Plaintiff offered his Exhibit No. 3, a photograph of the stairway involved. It was taken in 1956 after the solid steps with abrasive covers, in use on August 17, 1953, had been removed and the grated surface type steps installed. His offer was as follows:

"May the record show that we are offering it first with the understanding to show the stairway and secondly, for the purpose of showing there is a safer method which could have been employed by this defendant."

The offer itself makes the exhibit inadmissible. Had the plaintiff offered the exhibit for the sole purpose of showing the locus of the accident and the jury were to view it solely to acquaint them therewith that would be one thing, even though the change was a long way from being a slight one, but here the plaintiff offers it for the very purpose of showing the change.

■ The rule is universal that evidence offered to show changes made where the injury occurred is not admissible. 31 C.J.S. Evidence § 291 p. 1054 n. 2. If, arguendo, it can be assumed that grated steps are safer than solid steps

with abrasive covers the photograph was clearly incompetent because sound reason requires that one should be encouraged to improve and not be deterred therefrom by the fear that in so doing the act will be construed as an admission of having been a wrongdoer.

The court instructed the jury that the defendant was liable for injury to an employee "when such injury results in whole or in part from the negligence of any of the officers, agents or employees of the defendant, or by reason of any defect or insufficiency of its vessel or the equipment thereof due to negligence"; "that it was the duty of the defendant to exercise reasonable care to furnish the plaintiff with a reasonably safe place in which to do his work"; and that the only grounds of negligence relied upon by the plaintiff as alleged in his complaint and which the jury could consider was that the treads on the steps "were permitted to become defective, smooth, shiny or worn or that oil or water or both were negligently permitted to be on the treads of the stairway and caused the plaintiff to fall." Under the evidence in this record those instructions were adequate. However, the plaintiff complains that "[t]here was evidence from which the jury might well conclude that the stairs were not properly inspected, and that plaintiff was not warned of their dangerous condition." Every instruction actually tendered by the plaintiff was given. If there were any tendered by the plaintiff which the court failed to give the plaintiff did not object in compliance with Rule 51 of the Federal Rules of Civil Procedure. He cannot now be heard to complain if the jury was not instructed as fully as he claims it should have been.

The plaintiff cites Rogers v. Missouri Pacific Railroad Co., 1957, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 and Ferguson v. Moore-McCormick Lines, Inc., 1957, 352 U.S. 521, 77 S.Ct. 459, 1 L.Ed.2d 515 in support of his contention that the court limited plaintiff's recovery to one ground of negligence only. These cases are not even remotely analogous. They deal with the question of whether the trial court was or was not correct in taking the entire case from the jury and directing a verdict for the defendant. The trial court here did not do that. It denied a motion of the defendant made for that purpose and submitted the case to the jury for its determination.

When this entire record is read in context we are convinced that counsel for the plaintiff was denied no rights to which he was legally entitled and has completely failed to demonstrate to this court how he was mistreated in any manner prejudicial to himself or to the plaintiff, his client.

Under the evidence in this record the jury could have found either for the plaintiff or for the defendant. The jury found for the defendant after a fair trial free from prejudicial error. The judgment is, therefore,

Affirmed.