NEHRLING, Appellant, vs. THE HEROLD COMPANY and another, Respondents.

*December 18, 1901 — January 7, 1902.*

*Libel: Misconduct of public officer: Evidence: Public records: Proof of omitted matters: Memoranda: Special verdict.*

1. A newspaper article charging the custodian of a public museum with such behavior towards his superiors as would ordinarily call for his dismissal from office, with intrigues and iniquities as well as indifference in the administration of his office, with qualities of character which must produce his downfall, and with never keeping his office hours, because he believed the influence of powerful friends would protect him and keep him in office, is libelous *per se*.

2. In an action for such a libel it appeared that the relations between plaintiff and the assistant custodian had become very unpleasant; that at the request of plaintiff, but without the knowledge of a majority of the trustees, a bill was introduced in the legislature providing that the custodian of such a museum as the one in question might appoint a secretary, a power not theretofore possessed by such officers; and that while the bill was pending a resolution was passed by the board of trustees reciting the facts and declaring that the effect of the bill would be to increase the power of the custodian to the subversion of the harmony theretofore existing in the affairs of the museum, and protesting earnestly against the passage of the bill. *Held,* that although the passage of such resolution was not mentioned in the pleadings or in the libelous article the record thereof was admissible to prove that "discord had arisen in the museum board," as stated in the article.

3. Parol evidence is admissible to show acts of a public body entirely omitted from the record thereof, unless the law imperatively requires that all matters must appear of record and makes the record the only evidence.

4. Where the records of a public body make no mention of resolutions claimed to have been adopted by it, it is not necessary, in order to warrant the admission of such resolutions in evidence, that the fact of their passage be *established;* but they may be admitted upon a *prima facie* showing to that effect, leaving it open to the opposite party to prove that they were not in fact adopted.

5. A question of the special verdict in an action for libel, "Were the charges of misconduct made of and concerning the plaintiff . . .

substantially true?" is criticised, but *held* not to be prejudicially erroneous as leading the jury to believe that if the greater part of the charges were shown to be true they might answer the question in the affirmative even though the truth of a part might have been wholly unproven.

6. Testimony of the assistant custodian of a public museum that he had been requested by one of the trustees to keep the time of the plaintiff; that for a period of about two months he put down the date and the time on a separate slip of paper each day; that shortly afterwards he transcribed the same correctly from the slips to a sheet of paper and threw the slips away; and that the sheet was correct so far as he knew,— is *held* a sufficient foundation to warrant the admission of the paper in evidence.

APPEAL from a judgment of the superior court of Milwaukee county: OREEN T. WILLIAMS, Judge. *Affirmed.*

This is an action for libel. There was a trial before a jury. The evidence showed that prior to and during the month of June, 1899, the plaintiff was the custodian of the Public Museum of the city of Milwaukee, and that on the 5th day of June, 1899, the defendant *Coleman* composed, and the defendant *Herold Company* caused to be printed in the Milwaukee Herold und Seebote, an article in the German language, of which the following is a translation:

"It is to be regretted that discord has arisen in the museum board, which, since last Saturday, promises to assume more serious consequences. In well-instructed circles it has long been known that Custodian *Nehrling* has behaved towards his superior officers in a manner which under ordinary circumstances would have been followed by his immediate dismissal. Only the circumstance that it was emphasized in his favor that he had a family to support brought about a vote of censure on the part of the board in its last meeting. At the proper time we were requested, in the interest of *Nehrling* and the museum board, not to publish anything about the circumstances mentioned below and others, and have complied with this request. *Nehrling's* blind friends are at fault if we bring to public notice the process of his intrigues and iniquities, as well as his indifference in the administration of his office. Those who know *Nehrling's* quali-

ties of character have long prophesied that sooner or later he would come to his downfall. The complaints that are submitted against *Nehrling* are:

"(1) That he has never kept his office hours; that he would appear in the morning for an hour, and would not let himself be seen again until 2:30 to 3:00 p. m., to leave again after a presence of half an hour. This is confirmed by the subordinate officers. As *Nehrling* receives a salary of $2,500 per annum, the city has a right to demand that he keep his office hours. Just as well the city treasurer or comptroller or the water registrar might absent himself from his office for a certain time every day in order to follow his private interests. It is asserted that *Nehrling* believed he could occupy an exceptional position, as his bond is signed by Messrs. George Brumder and Gustav Wollaeger, and he relied upon the influence of these gentlemen to protect him and keep him in office.

"(2) *Nehrling's* bond of $1,000.00 expired about a year ago. As the value of the museum, in the course of years, had increased considerably, the museum board resolved to raise the bond to $5,000.00. *Nehrling* was requested to give the new bond in this amount. He had the same drawn, but arbitrarily, without the knowledge of the president and other members of the museum board, added to the reading of the bond that he, *Nehrling*, should be responsible for his subordinate officers. Let it be well understood, the board had passed no resolution to that effect, and knew nothing of this.

"(3) *Nehrling* thereupon went to Sen. Roehr, and informed him that the museum board had demanded of him to raise his bond from $1,000.00 to $5,000.00, and that it would be but right and equitable if he, *Nehrling*, was given the right to appoint his secretary and exercise control over the other subordinates. *Nehrling* delivered to Mr. Roehr a bill drawn to this effect, with the request to introduce it in the legislature. This declaration, Dr. Bartlett, president of the museum board, received when asking Mr. Roehr. Again let it be well understood, *Nehrling* had done this without the knowledge of the president and other members of the museum board. The citizens are requested to compare points two and three, and they will find that *Nehrling* has made fools as well of Messrs. Brumder and Wollaeger as Mr. Roehr.

"(4) Messrs. George Brumder and Gustave Wollaeger have admitted to Dr. Bartlett that they have been deceived by *Nehrling*.

"(5) *Nehrling* has for some time, for unknown reasons, been suspicious against the assistant secretary of the museum, Mr. Charles Thal. Mr. Thal has been employed by the board for nineteen years, and asserts that he has never given *Nehrling* any cause for complaint. *Nehrling* has repeatedly been asked by the president of the museum board to formulate definite charges against Thal, if he had such to prefer. *Nehrling*, however, has refused to do so. Nevertheless he has tried, directly and indirectly, to bring about Thal's dismissal.

"(6) It cannot be ascertained whether it was *Nehrling's* evil conscience of not having performed his duties, or other possible reasons, which caused him to proceed in this unmanly way against Thal. It is added that *Nehrling* for some time past does not have personal intercourse with Thal, or salute the latter, but places his orders and directions in writing on Thal's desk, and this when the latter is absent. Manly it would have been to inform the board of trustees of the reasons why Thal should eventually be dismissed, and not refuse so to do. About this there can be no discussion. The citizens will agree with us when we say that *Nehrling's* procedure is cowardly."

The following special verdict was rendered by the jury:

"(1) Was the article set out in the complaint written by the defendant *Edgar W. Coleman*, and published by the defendant *The Herold Company*, in its daily paper called 'Herold und Seebote' on June 5th, 1899? *Answer by court.* Yes. (2) Were the charges of misconduct made of and concerning the plaintiff, which are contained in that article, substantially true? *A.* Yes."

Five other questions were submitted to the jury as part of the special verdict, as follows:

"3. Was the article in question published by the defendants solely for the purpose of laying before the public the facts concerning a matter of public interest? 4. Was said article published by the defendants in good faith, believing the statements therein to be true? 5. Were the defendants, in the publication of said article, actuated by express malice

against the plaintiff? 5a. Has the plaintiff sustained any damages by reason of the publication of the article in question? 6. If the court should be of the opinion that the plaintiff is entitled to judgment, at what sum do you assess his compensatory damages?"

The court having instructed the jury that if they answered question No. 2 in the affirmative they need not answer any of the remaining questions, these latter questions remained unanswered.

A motion to set aside the verdict and for a new trial was overruled, and judgment for the defendants entered on the verdict, from which the plaintiff appeals.

For the appellant there was a brief by *Ernest Bruncken* and *Bohmrich & Maher*, and oral argument by *Mr. L. G. Bohmrich* and *Mr. Bruncken*. To the point that it was error to admit evidence of the adoption of resolutions not appearing on the records of the board, they cited *Crommett v. Pearson*, 18 Me. 344; *Wood v. Mansell*, 3 Blackf. 125; *Blaisdell v. Briggs*, 23 Me. 123; *Saxton v. Nimms*, 14 Mass. 315; *Thayer v. Stearns*, 1 Pick. 109; *Howlett v. Holland*, 6 Gray, 418; *Owings v. Speed*, 5 Wheat. 420; *Eastland v. Fogo*, 58 Wis. 274; *Steele v. Schricker*, 55 Wis. 134; *Denning v. Roome*, 6 Wend. 651; *O'Malley v. McGinn*, 53 Wis. 353, 357.

For the respondents there was a brief by *Timlin, Glicksman & Conway*, and oral argument by *Nathan Glicksman*. They argued, among other things, that where a resolution has been duly passed, and by reason of the omission of some official there is a failure to give it proper record, the fact of its passage may be shown by parol, especially where no statute expressly makes the record the only evidence. Dillon, Mun. Corp. (4th ed.), §§ 300, 301; *Bank of U. S. v. Dandridge*, 12 Wheat. 64; *U. S. v. Fillebrown*, 7 Pet. 28; *Langsdale v. Bonton*, 12 Ind. 467; *Bigelow v. Perth Amboy*, 25 N. J. Law, 297; *Darlington v. Comm.* 41 Pa. St. 68; *Troy v. A. & N. R. Co.* 13 Kan. 70.

WINSLOW, J.   The defendants moved that a verdict in their favor be directed in the trial court, on the ground that the article in question was not libelous, and they make the same contention in this court in support of the judgment in their favor.   This contention will be first disposed of, before proceeding to the errors claimed by the appellant.   At the time of the publication, the plaintiff was holding the office of custodian of the Public Museum, in Milwaukee, an office of trust, and involving a high degree of culture, education, and ability.   He was appointed to his office by a board of trustees, and was subject to removal by such board.   The article in question, in effect, charges him with such behavior towards his superiors as would ordinarily call for his dismissal from office; with intrigues and iniquities as well as indifference in the administration of his office; with qualities of character which must produce his downfall; and with never keeping his office hours,— because he believed the influence of powerful friends would protect him and keep him in office.   Without going further, we think there can be no question but that these imputations are libelous *per se*. It is said in Odgers, Libel & S. (1st Am. ed. by Bigelow, p. 26):

"It is libelous to impute to any one holding an office that he has been guilty of improper conduct in that office, or has been actuated by wicked, corrupt, or selfish motives, or is incompetent for the post."

It has been said by this court that language which necessarily tends to degrade one in public office, and causes it to be believed that he is not worthy to hold his office by reason of neglect of duty, is libelous.   *Smith v. Utley*, 92 Wis. 134.   Also that words which tend directly to diminish public confidence in the official integrity of a public officer, and thus to injure him in the business of his office, and to cause his removal from office, are libelous.   *Adamson v. Raymer*, 94 Wis. 243.   The same principles are recognized in numerous cases in this court, some of which are cited in the two

cases just referred to. It does not seem necessary, in the light of these decisions, to discuss this question at any length. The article was plainly libelous on its face, and, in order to defeat the plaintiff's right of recovery, its truth must be shown.

The assignments of error by the appellant will now be considered. The defendants, in their answer, pleaded the truth of the article, denied all malice, and also pleaded that, before publication, they had made careful inquiry as to its truth of the president and one of the trustees of the museum board, and were informed by them that the article was substantially true, and that they believed it to be true.

1. It appears that prior to 1899 the relations between the plaintiff and the assistant custodian, named Thal, had become very unpleasant, and that a bill was introduced in the legislature of 1899, providing that custodians of public museums in cities of the first class might appoint a secretary, for whose official acts they should be responsible. The custodian had no such power under the existing law, and the bill was introduced without the knowledge of the majority of the trustees, but with the knowledge and by the request of the plaintiff. When the pendency and character of the bill was learned by the trustees, there was considerable opposition to it on the part of some of them, and, though it passed both houses of the legislature, it was vetoed by the governor. While the bill was pending, resolutions were passed by the board of trustees of the museum, reciting the fact of the introduction of the bill, that such legislation had not been sought or desired by the board, that the bill was introduced without consultation with or consent of the board, and its effect would be to give the custodian greater powers, to the *subversion of the harmony theretofore existing in the affairs of the museum,* and protesting earnestly against the passage of the bill. The record of the board of trustees showing the passage of this resolution was offered in evidence by the de-

fendants, and objected to by, the plaintiff, but received by the court, and this ruling is now claimed to be erroneous. It is said by the plaintiff that the passage of this resolution was not mentioned in the article, nor was it pleaded in the answer as a mitigating circumstance, hence it was inadmissible and prejudicial. While the libelous article does not specifically mention the passage of such resolution, it contains the express statement that " *discord* has arisen in the museum board." Although this statement is not a distinct libel on the plaintiff, it is a part of the libelous article of which the plaintiff complains, and we think there can be no doubt of the defendants' right to show its truth. If they were entitled to show its truth, it seems evident that, they could show it by the records of the board itself. Doubtless it would have been proper to limit the effect of this evidence by an appropriate instruction, so that the jury would understand that it only tended to prove the fact of discord and had no tendency to prove the plaintiff guilty of any of the charges against him, but no such instruction was asked, and hence we see no error connected with the reception in evidence of the resolution.

2. The plaintiff was secretary of the board of trustees of the museum, as well as custodian, and consequently it was his duty to record the proceedings of the board. The libelous article charges that the board passed a vote of censure on the plaintiff at its last preceding meeting. No such resolution appears in the minutes of the meeting kept by the plaintiff, and the defendants, in order to prove the passage of the resolution, first put in evidence the minutes of the meeting, which contained this minute, among others:

" At this juncture the motion was made and carried that the board go into executive session, whereupon Trustee Smith and the president ordered the secretary to leave the room. Following this the secretary left the room. Forty-five minutes elapsing, the secretary was recalled, and the board resumed its business."

The defendants then called Dr. Bartlett, president of the board, who testified that certain resolutions of censure of the plaintiff, which he identified, were passed by majority vote during the executive session, and that he sent them to the plaintiff after the meeting, and requested him to record them in the minutes, but the plaintiff refused to do so. The plaintiff was then put on the stand, and testified that the resolutions were handed him by Dr. Bartlett, but that he never recorded them, and could not find the copy which was given him. Thereupon the copy identified by Dr. Bartlett was offered and received in evidence, and it is claimed that this was error. It will be seen that one of the charges in the libel was that the board had passed a vote of censure, and so it is plain that it was competent for the defendants to prove the fact of the passage of the resolutions if they could; but the plaintiff claims that no evidence outside of the record was admissible, and that, if this were not so, still he should have been allowed before the resolutions were admitted to call witnesses to contradict Dr. Bartlett's testimony as to the passage of the resolutions. We cannot agree with either proposition. Undoubtedly the record of a public body is conclusive as to matters upon which it speaks, and cannot be contradicted or assailed collaterally by parol testimony (*Bartlett v. Eau Claire Co., ante*, p. 237); but where it is shown that facts have been entirely omitted from such record, parol evidence is admissible to show the facts omitted, unless the law imperatively requires that all matters must appear of record and makes the record the only evidence. Dillon, Mun. Corp. (4th ed.), §§ 300–301; *O'Mally v. McGinn*, 53 Wis. 353. It is not claimed that there was any such requirement as to the records of the museum board. Therefore, when proof had been made establishing the fact that no mention of these resolutions is to be found in the record, and also showing, *prima facie* at least, that such resolutions were in fact passed, they be-

came admissible, and it was not necessary for the court to stop and try out the issue as to whether the resolutions were passed or not before receiving them; but they could be received on the *prima facie* showing, leaving it open to the plaintiff to show, if he could, that they were not in fact passed.

3. It is claimed that the second question of the verdict is defective. The plaintiff admits that the rule is that only the substance of the alleged libel need be proven; but he claims that the question, as submitted, would lead the jury to believe that if the greater part of the charges were shown to be true they might find a verdict for the defendants, even though a part might be wholly unproven. The distinction seems to be somewhat finely drawn. Probably it would have been better to have framed the question so as to ask whether the charges in the article were true in substance, and to explain to the jury that the substance of each libelous charge must be shown to be true in order to answer the question in the affirmative; but we have been unable to convince ourselves that there was prejudicial error committed in framing the question in the form in which it was put.

4. A question of evidence remains to be considered. In order to prove the fact that the plaintiff did not keep his office hours, the defendants called as a witness Thal, the assistant custodian, and proved by him that, about the beginning of the year 1899, Dr. Bartlett requested him to keep *Nehrling's* time, and that during the latter part of February, the whole of March, and part of April, he noted down the plaintiff's time every day on separate slips of paper; that he marked the date and time he came on these slips; that he transcribed the same correctly from the slips to a sheet of paper, probably in May or June, and threw the slips away; that the sheet was correct, *as far as he knew*. Thereupon the sheet of paper was offered and received in evidence, and this ruling is claimed to be error. As this constitutes practically the only specific evidence in the case showing failure

on the part of the plaintiff to keep his office hours, the importance of the ruling is manifest. The rule is that a witness may refresh his recollection from a memorandum made by himself or by others, if he saw the memorandum while the facts were still fresh in his memory, and if he then knew it to be correct. In such case, if the witness cannot state the facts readily from personal recollection after using the memorandum, but can state that he knows the paper was correct when made, the paper itself may be put in evidence, and the statement of the witness and the contents of the paper together are equivalent to the present positive statement of the witness affirming the truth of the facts stated in the memorandum. *Bourda v. Jones,* 110 Wis. 52; 3 Jones, Ev. § 886. It is necessary, in order to justify the reception of the paper itself in evidence, that it appear that the memorandum was one which was seen by the witness while the facts were still fresh in his memory, also that he cannot state the facts from recollection, and that he state positively that he knows that the paper was correct at that time. While the proof is not quite as clear upon these points as might be wished in the present case, still we think it must be held that the requisite facts necessary to allow the introduction of the paper were substantially shown. It is quite clear from the nature of things, as well as from the testimony of the witness, that he could not have an independent recollection of the time when the plaintiff reached or left the office each day two years previously to the trial, and it is equally clear that he testified substantially that both the original slips and the transcript were made when his recollection of the facts was fresh, and that he knew that he put down the plaintiff's time upon both the slips and the transcript correctly.

Other grounds of error were urged, but none of them seems to us well grounded or of sufficient importance to justify discussion.

*By the Court.*— Judgment affirmed.