RASMUSSEN, Respondent, vs. WISCONSIN TRACTION, LIGHT, HEAT & POWER COMPANY, Appellant.

*September 28—October 15, 1907.*

*Electricity: Negligence: Personal injuries: Special verdict: Duplicity: Instructions to jury: Evidence: Admissibility.*

1. Plaintiff, while working on the roof of a building, was injured by a current of electricity from defendant's wires, one of which, a neutral wire not carrying a heavy charge, was located eleven inches, and the other, a phase wire carrying 2,300 volts, thirty-five inches, outside the edge of the roof. When plaintiff was found, one hand was clasping the neutral wire and the other the phase wire, both hands being badly burned. Plaintiff's testimony was to the effect that he was injured by contact with the neutral wire, and that he could not have brought his hand in contact with the phase wire in the first instance, while the defendant's evidence was that the neutral wire could not have caused the injury. *Held,* that it was error to submit the case to the jury by a special verdict and instructions in such manner that the jury were at liberty to refer plaintiff's injuries to contact with either wire.

2. Where the insulation on a high potential electric wire carrying an alternating current, with which plaintiff came in contact and was injured, was not intended for the protection of persons coming in contact with such wire, but merely to preserve and protect the wire, it is error to permit the jury to find that the insulation on such wire was so old, weatherworn, broken, and out of repair as to afford no protection against the electric current thereon to a person coming in contact therewith.

3. In such case defendant should have been permitted to show what kind of wire and insulation was in common use in similar alternating current systems.

4. Where plaintiff was injured by contact with electric wires, evidence as to the correctness of a witness's report of the manner in which defendant's plant was operated on the day tests were made is admissible.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

The appeal is from a judgment rendered upon special verdict in an action for damages for negligent personal injury. The jury after trial brought in a special verdict in which they found: (1) That the plaintiff sustained the injuries complained of by reason of his hands coming in contact with two of defendant's electric power wires at the time and place alleged in the complaint. (2) The defendant's wires, as then charged, insulated, and placed, were dangerous to a person standing or being on the roof of the woolen mill building and coming in contact with said wires. (3) The insulation upon said wires was so old, weatherworn, broken, and out of repair as to afford no protection against the electric current thereon to a person coming in contact with the same. (4) Said wires were placed and maintained by the defendant in such close proximity to the roof of said Menasha Woolen Mill building as to render dangerous the work of a person there engaged as plaintiff was. (5) Such condition had existed sufficiently long, prior to plaintiff's injury, to have enabled the defendant, in the exercise of ordinary care and prudence, to have discovered and remedied the same. (6) The defendant was guilty of a want of ordinary care and prudence in maintaining and erecting its wires in the place and condition which they were in, and in sending its electric current over them at the time of the plaintiff's injury on the said woolen mill building. (7) Such want of ordinary care and prudence was the proximate cause of plaintiff's injury. (8) No want of ordinary care and

prudence on the part of the plaintiff contributed to said in-
jury.    (9)  Plaintiff's damages are assessed at $10,000.

The pleadings are sufficiently broad to uphold such a ver-
dict, but the evidence was limited as follows: The plaintiff
testified that, being employed in painting the roof of the
building known as the Menasha Woolen Mills, he was upon
the roof for that purpose, and in lifting one end of a kind
of ladder used in his work, which ladder lay horizontally
upon the flat roof with the end toward defendant's wires
projecting a foot or a foot and a half over the edge of the
roof, his hand came in contact with that wire of the defend-
ant nearest to the building, and he at once felt a shock and
became unconscious.   He was found lying with his feet and
legs partially upon the roof, his body projecting over the
edge, one hand clasping the wire nearest the roof, and one
hand the wire thirty-five inches from the roof, both hands
badly burned and maimed by the electric current, and the
plaintiff had also an electric burn upon his instep.   The only
other eye-witness to the injury was one Adolph Erdmann,
who was working with plaintiff at the time of the injury
and had lifted up and was holding the other or farther end
of the ladder, when plaintiff attempted to lift the end near-
est the wire in question.   Erdmann heard a sizzling sound,
looked toward the plaintiff, and plaintiff had his left hand
on the wire nearest to the building and was standing on the
roof, but was immediately thrown upon the other wire, so
that he rested with his breast over both wires and one hand
clasping each.   The wires were strung upon the cross-arms of
poles planted in the street below, were parallel, or nearly par-
allel, with the edge of the roof of the building in question,
and about one foot higher than the level of the roof.   The
nearest wire was eleven inches outside the edge of the roof
and the other thirty-five inches outside this edge.   The latter
was what is known in the art as a phase wire, and carried
an alternating current described in the testimony as of 2,300

volts, and the former was a neutral wire, connected at the sub-station with another neutral wire taken off the generator at a neutral point of the generator and running thence to the substation, where it grounded. The neutral wire near the building in question was also connected with the common return of the electric street railway at intervals of 1,400 feet. It is claimed that the only connection between the phase and neutral wires was through the transformer, and the neutral wire received and returned to the generator only a small part of the current which it received through the transformer from the phase wire, but also spilled into the ground at the various points of grounding all electric current which might tend to escape upon or accumulate upon this neutral wire. The transformer was at the Menasha Printing Company building, and the testimony seems to indicate that this was the only transformer having any bearing upon the questions here. Several witnesses testified to experiments made after the accident in question and before the trial by taking hold of the neutral wire while the phase wire was carrying its regular heavy alternating current, and that no shock was felt, and an expert electrical engineer testified that the plaintiff could not have received a shock from the neutral wire in the manner described by plaintiff, but assumed in all his answers that the system in question was installed as he believed from the evidence it was, and was in working condition.

*Clarke M. Rosecrantz*, for the appellant.

*W. B. Quinlan*, attorney, and *P. H. Martin*, of counsel, for the respondent.

TIMLIN, J. The defendant contends, first, that the evidence of the plaintiff and his fellow-workman is so inherently improbable and so contrary to well-known natural laws that the court should have directed a verdict for the defendant. This inherent improbability is supposed to be furnished

by the description of the defendant's system, common knowledge of electric phenomena, the experiments proven and uncontradicted, and the testimony of defendant's experts. We cannot at present pass upon this question, because we are obliged to reverse this judgment upon other and more obvious grounds. But it may be well to say that it would be more satisfactory to this court had there been on the part of the defendant some more explicit detailed description tracing each wire through its entire length, detailing the kind of transformers and their construction, showing its insulation and separation at every point of contact or possible contact and the exact position and detail of each grounding and the exact location of each safety fuse, if any, on each wire, and at the same time producing on the part of the plaintiff some expert evidence showing, if it can be shown, in what different ways the neutral wire might become charged with a current of sufficient force or intensity to shock the plaintiff and cause him to fall across the wires. We would upon this latter evidence be better able to judge whether or not the danger of the neutral wire becoming so charged was such that the defendant might, in the exercise of due care, reasonably have anticipated it when it placed its neutral wire so close to the building in question. But, as we have seen, the positive evidence on the part of the plaintiff all went to show that his injury was caused by coming in contact with the wire nearest to the building, and that he could not have brought his hand in contact with the phase wire in the first instance. If his testimony be taken as true, the proximate cause of his injury was the negligence of the defendant in stringing this wire, liable to become so charged with electricity, so near to the building. Notwithstanding this, the case was submitted to the jury by the special verdict and the instructions in such manner that the jury were at liberty to refer plaintiff's injuries to contact with either wire and to charge the defendant with negligence in main-

taining either or both wires. Against this manner of sub-
mitting the case to the jury the evidence of the defendant
relative to the harmlessness of the neutral wire would be of
little avail, and it cannot be definitely ascertained upon
what ground the jury might have held the defendant liable
nor what weight they gave to the defendant's evidence.
Findings 6 and 7 of the special verdict amply demonstrate
this. The case is in this respect like *Gehl v. Milwaukee P.
Co.* 116 Wis. 263, 93 N. W. 26. Reading the verdict in the
case at bar without reference to the evidence it would ap-
pear to be consistent, but with reference to the actual state
of the evidence it includes and carries with it a charge of
negligence against the defendant relative to the phase wire
and its location, which negligence, if it existed at all, had
no part in forming the proximate cause of plaintiff's in-
juries. Some of the jury may have been convinced that the
neutral wire carried no current, but that the admitted final
contact with the phase wire after the plaintiff's fall might
be considered the cause of plaintiff's injuries. Some may
have attributed his injuries to contact with one wire, some
to contact with another, and some may have been convinced
that it was not negligence to string the wire thirty-five
inches from the building; others that the negligence con-
sisted in the location of the neutral wire; still others in the
lack of insulating covering on one or both. In short, it is
impossible to tell for what the defendant was held liable,
when under the evidence it could only be held liable, if at
all, for negligence in placing the neutral wire or the wire
nearest the building, that being the wire with which the
plaintiff came in contact. Question 3 of the special verdict
should not, upon the evidence before the court, have been
submitted, because insulation there mentioned evidently
refers to the coating or covering of the wires, which is not
intended for the protection of persons coming in contact
with such high potential wires, but merely to preserve and

protect the wires, and is not properly insulation at all for the purpose of protection against shock, although it may have incidentally some insulatory effect in case of a low or weak current. The defendant should have been permitted to show what kind of wire and insulation was in common use in similar alternating current systems in other cities. *Boyce v. Wilbur L. Co.* 119 Wis. 642, 97 N. W. 563. The testimony of the witness Brennan, with reference to whether his report contained a correct statement of the manner in which the plant was operated on the day that tests were made, should not have been excluded. *Nehrling v. Herold Co.* 112 Wis. 558, 88 N. W. 614. No other questions require a discussion, for there must be a new trial.

*By the Court.*—Judgment is reversed, and the cause remanded for a new trial.