ESTATE OF ALBURN: RUEDISILI, Appellant, v. HENKEY, Defendant: ALBURN and another, Respondents.

*November 26, 1962—January 8, 1963.*

For the appellant there was a brief by *Charlton, Yanisch, Binzak & Ritchay* of Milwaukee, and oral argument by *William A. Ritchay.*

For the respondents there was a brief by *Smith, Miller & Eberhardt* of Jefferson, and oral argument by *Richard C. Smith.*

CURRIE, J. This court is committed to the doctrine of dependent relative revocation. *Estate of Eberhardt* (1957), 1 Wis. (2d) 439, 85 N. W. (2d) 483, and *Estate of Callahan* (1947), 251 Wis. 247, 29 N. W. (2d) 352. The usual situation for application of this doctrine arises where a testator executes one will and thereafter attempts to revoke it by making a later testamentary disposition which for some reason proves ineffective. In both the *Eberhardt* and *Callahan Cases,* however, the doctrine was applied to the unusual situation in which a testator revokes a later will under the mistaken belief that by so doing he is reinstating a prior will. In this unusual situation, the doctrine of dependent relative revocation is invoked to render the revocation ineffective. The basis of the doctrine is stated in *Estate of Callahan, supra,* as follows (p. 255):

"The doctrine of dependent relative revocation is based upon the testator's inferred intention. It is held that as a matter of law the destruction of the later document is intended to be conditional where it is accompanied by the expressed intent of reinstating a former will and where there is no explanatory evidence. Of course if there is evidence that the testator intended the destruction to be absolute, there is no room for the application of the doctrine of dependent revocation."

The sole question raised by appellant on this appeal is whether the finding of the trial court that deceased revoked

the Kankakee will under the mistaken belief that she was thereby reinstating the prior Milwaukee will is against the great weight and clear preponderance of the evidence. This requires that we review the pertinent evidence.

Testatrix was born in Wisconsin. For about thirty years she had resided in San Francisco, California, and later in Cleveland, Ohio. As a widow without children, she came to Milwaukee in the fall of 1954 and lived there with Viola Henkey, her grandniece. While so residing she executed the Milwaukee will on August 12, 1955. The original of this will was left with Attorney George R. Affeldt of Milwaukee, who had drafted it, where it remained until the death of testatrix. Sometime shortly prior to May 22, 1959, testatrix moved to Kankakee, Illinois, and resided there with her brother, Robert Lehmann. On May 22, 1959, she executed the Kankakee will.

On June 28, 1960, testatrix left Kankakee and came to Fort Atkinson, Wisconsin, and lived there with another brother, Edwin Lehmann, until her death in November of 1960. Testatrix was a patient at a hospital in Fort Atkinson during part of October and November of that year. Edwin testified that he had learned of the execution of the Kankakee will prior to the arrival of testatrix on June 28, 1960. On the evening of her arrival, he asked her what she had done with that will, and she replied, "What do you suppose, I got rid of it." [1] The next morning testatrix came downstairs with the torn pieces of the Kankakee will tied up in a

---

[1] The trial court in its memorandum decision found that the attempted revocation of the Kankakee will took place in Illinois but held that Wisconsin law rather than Illinois law controlled the question of whether the doctrine of dependent relative revocation should be invoked. This ruling is in accord with Restatement, Conflict of Laws, p. 389, sec. 307, which states: "Whether an act claimed to be a revocation of a will is effective to revoke it as a will of movables is determined by the law of the state in which the deceased was domiciled at the time of his death."

handkerchief. Edwin provided her with a paper sack in which she deposited the pieces of the will. Edwin then took the sack with the garbage to the dump. There he opened the sack and let the pieces fly in the wind as testatrix had directed him to do.

Edwin was not questioned about any statement regarding the Milwaukee will which testatrix might have made in his presence at Fort Atkinson. He did testify that after her death he searched through her effects for a will but failed to find one. In view of the following testimony given by Olga Lehmann, his wife, this gives rise to an inference that Edwin was searching for the Milwaukee will.

Olga Lehmann was called as a witness by counsel for proponents of the Kankakee will and proved to be a reluctant if not a hostile witness. She was shown a letter dated January 25, 1961, which she had written to Olga Olson, a resident of San Francisco and an old friend of testatrix, and asked if this letter refreshed her memory regarding a statement made by testatrix, about the time of her arrival in Fort Atkinson, in the witness' presence that testatrix wished her Milwaukee will to stand. The witness stated that her memory was not refreshed by this letter although she admitted that the letter bore her signature. The letter of Olga Lehmann to Olga Olson was offered in evidence by counsel for proponents of the Kankakee will but, objection having been made to its admission, the trial court ruled it inadmissible.[2]

---

[2] On this appeal, counsel for proponents of the Kankakee will contend that this letter is admissible as a memorandum made by the witness of a fact which she knows was correctly stated in the memorandum when made but which she no longer remembers. Appellants cite *Nehrling v. Herold Co.* (1902), 112 Wis. 558, 568, 88 N. W. 614, in support of this contention. Nevertheless, the rule of the *Nehrling Case* is not applicable here because the witness failed to testify that the statements of fact contained in the letter were true when made.

Olga Lehmann then testified that the matter of the Milwaukee will was not discussed by testatrix in a conversation with Viola Henkey after June 29, 1960, when the witness was also present. Olga Lehman was then asked the following questions and gave the following answers thereto:

"*Q.* Did the deceased ever discuss in your presence the matter of the Milwaukee will at any other time other than the time we are just now referring to? *A.* Yes.

"*Q.* Who was present at that time? *A.* Just myself.

"*Q.* What did she tell you concerning the Milwaukee will? *A.* That was the one she wanted to stand.

"*Q.* Can you tell me in point of time when this might have been? *A.* No, we talked often."

We deem it significant that counsel for appellant did not cross-examine Olga Lehmann with respect to her testimony that testatrix said she wanted the Milwaukee will to stand. Therefore, Olga Lehmann's testimony was not qualified or limited in any way.

This statement by testatrix clearly occurred after her destruction of the Kanakakee will. Appellant now attacks this statement on the ground that it was not made contemporaneously with such destruction. In *Estate of Callahan, supra,* however, the only evidence regarding the intent of testatrix when she destroyed her 1944 will was her husband's statement in her presence after the destruction and her silence indicating acquiescence. The husband stated that they both had destroyed their 1944 wills because they desired to put their son back in the position he occupied under their 1940 wills. Upon this evidence this court determined the doctrine of dependent relative revocation applied and affirmed the judgment of the county court which had admitted the 1944 will of testatrix to probate.

The plan of testamentary disposition under the two wills was in part as follows: The Milwaukee will contained

specific bequests of jewelry and household furnishings to Viola Henkey, the grandniece of testatrix, and directed that any indebtedness owing deceased by Viola Henkey and her husband be deemed satisfied. The residuary clause bequeathed one fourth of the estate to her friend Olga Olson, one fourth to Doris Alburn, one fourth to Lulu Alburn, and one fourth to Viola Henkey. The Kankakee will included a bequest to Olga Olson of 38 shares of stock in the Bank of America National Trust & Savings Association and bequests of jewelry to Lulu and Addie Alburn. The remainder of the estate was bequeathed as follows: Four tenths to Lulu Alburn, five tenths to Doris Alburn, and one tenth to Robert Lehmann, brother of testatrix. The Alburns are not related to testatrix but are relatives of her deceased husband. Viola Henkey, although a blood relative of testatrix, is not one of her next of kin who would inherit in the event testatrix had died intestate. The next of kin consist of four surviving brothers and one sister, plus a large number of nieces and nephews of testatrix, the children of four deceased sisters and one deceased brother. Thus under the Milwaukee will, none of the next of kin were named as legatees, whereas under the Kankakee will, the only next of kin named a legatee was Robert, her brother. His share under the Kankakee will is somewhat less than the one-tenth share of the entire estate which he would receive if testatrix had died intestate. The bulk of the estate under both wills was bequeathed to the Alburns and Olga Olson. This plan of testamentary disposition extended as late as May, 1959.

There is no evidence of any change of circumstances occurring thereafter that would indicate any reason why testatrix should die intestate and nine tenths of her estate go to next of kin not named in either will. The one change in circumstance was her leaving the home of her brother Robert and moving in with her brother Edwin. This move

might provide a reason for her desiring to revoke the Kankakee will, but certainly not for her wishing to die intestate. The learned trial judge, in the supplemental memorandum decision of December 26, 1961, stated, "I have a strong conviction that decedent did not want to die intestate." The evidence fully supports this conclusion despite the fact that testatrix took no steps between June 29, 1960, and her death nearly five months later to draft a new will. We deem that a reasonable inference, to be drawn from the competent evidence in this case, for her failure to make a new will is her evident belief that her Milwaukee will was still operative. Testatrix must have known that the original of the Milwaukee will was still in possession of Attorney Affeldt and believed that the only impediment to this will was the revocation clause of the Kankakee will. She also knew that the Kankakee will had been destroyed by tearing it in pieces and scattering the pieces so that they could not be found.[3]

We are constrained to conclude that the statement made to Olga Lehmann that testatrix wished her Milwaukee will to stand, the inference that she did not wish to die intestate, and the fact that she took no steps following the destruction of the Kankakee will to make a new will are sufficient evidence to support the finding that she destroyed the Kankakee will under the mistaken belief that the Milwaukee will would control the disposition of her estate. Furthermore there is no evidence which controverts this finding. Therefore, it is not against the great weight and clear preponderance of the evidence.

Counsel for respondents Alburn request a review by this court of several rulings by the trial court which excluded certain evidence pursuant to objections made by counsel for

[3] The contents of the Kankakee will were proved by a carbon copy in the possession of the lawyer who had drafted it at Kankakee, Illinois.

appellant Ruedisili. This excluded evidence related to further statements made by testatrix, after destruction of the Kankakee will, that she then considered her Milwaukee will to be in effect or desired this result. In view of our conclusion that the trial court's determination may be sustained upon the evidence admitted, we find it unnecessary to review these rulings.

*By the Court.*—Judgment affirmed.

DIETERICH, J., dissents.